IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

D<small>ICKIE</small> G. S<small>PEARS</small>                                                                                    P<small>LAINTIFF</small>

vs.                                              C<small>IVIL</small> N<small>O</small>. 06-5159

M<small>ICHAEL</small> J. A<small>STRUE</small>[1], C<small>OMMISSIONER</small>
S<small>OCIAL</small> S<small>ECURITY</small> A<small>DMINISTRATION</small>                                                            D<small>EFENDANT</small>

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Dickie Spears ("plaintiff") brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income ("SSI") under Title XVI of the Act.

**Background:**

The application for SSI now before this court was protectively filed on March 26, 2004, alleging an amended onset date of March 26, 2004, due to degenerative disk disease ("DDD") of the cervical spine, status-post discectomy and fusion at the C6-7 level, hepatitis C, chronic dermatitis, fatigue, a chronic cough, attention deficit disorder ("ADD"), anxiety, and chronic depression. (Tr. 11, 63, 82, 100, 111, 115, 119, 120, 123, 241). An administrative hearing was held on November 21, 2005. (Tr. 224-296). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was forty-three years old and possessed the equivalent of a high school education and some mechanic's training. (Tr. 231-232). The record

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

reveals that he had past relevant work ("PRW") experience as a small engine mechanic and brake operator. (Tr. 64, 72, 161, 232-240).

The Administrative Law Judge ("ALJ") entered a written opinion on April 28, 2006, finding that, although plaintiff's impairments were severe, they did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 13). The ALJ then determined that plaintiff retained the residual functional capacity ("RFC") to perform light work. However, he noted that plaintiff experienced pain upon forward flexion of the neck; could only hold his head in a downward tilted position for five minutes before having to stop and rest for two minutes in a neutral position; could only occasionally perform overhead reaching due to fatigue and occasionally climb, bend, stoop crouch, crawl, and kneel; could not climb ladders, scaffolds, or ropes; and, must avoid dangerous machinery. Further, due to plaintiff's hepatitis C, the ALJ found that plaintiff should avoid working near exposed food; extreme heat, cold, and wetness; and, avoid working near unprotected heights. Protective measures for plaintiff's chronic cough were also indicated, and the ALJ stated that plaintiff should avoid concentrated exposure to dust, fumes, smoke, chemicals, and noxious gases. (Tr. 14). With the assistance of a vocational expert ("VE") the ALJ then found that plaintiff could still perform work as a cashier II. (Tr. 17).

On June 23, 2006, the Appeals Council declined to review this decision. (Tr. 2-4). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs and the case is now ready for decision. (Doc. # 8, 11).

2

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his

disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Evidence Presented:**

In 1994, plaintiff sustained an on-the-job injury, resulting in a herniated disk at the C6-7 level. (Tr. 11). On November 24, 1994, plaintiff underwent a cervical discectomy with fusion. (Tr. 203). In January 1995, plaintiff was restricted to light duty work. (Tr. 198). An x-ray of his cervical spine performed in February 1995, revealed advanced degenerative changes at the C6-7 level with pronounced disk space narrowing. (Tr. 202). Dr. J. B. Blankenship noted that plaintiff was doing well, although he reported some occipital headaches. (Tr. 197). The doctor prescribed neck exercises and released plaintiff from his care. (Tr. 197).

On June 10, 1998, plaintiff tested positive for hepatitis C. (Tr. 151). He complained of fatigue, anorexia, and a twenty pound weight loss. Dr. Terryl Ortega noted that plaintiff smoked one package of cigarettes per day and drank a pint to a gallon of whisky per day. Dr. Ortega prescribed a trial of Prozac and excused plaintiff from work due to fatigue caused by hepatitis C. (Tr. 151).

On September 29, 1999, Charles Plummer, a counselor, noted that plaintiff had a depressed mood and affect. (Tr. 154). Records indicate that plaintiff's wife was unfaithful and had left him approximately one month prior. Although, plaintiff's thoughts had reportedly transitioned from homicidal to suicidal, he agreed to a no harm contract. Mr. Plummer noted that plaintiff had been drinking excessively over the past month and needed residential drug treatment. (Tr. 154).

On May 9, 2001, plaintiff was discharged from Ozark Guidance Center. (Tr. 153). Records indicate that plaintiff was discharged because the center lost contact with him. (Tr. 153).

On November 28, 2002, plaintiff was treated in the emergency room for an itchy rash. (Tr. 156-159). Plaintiff indicated that he had recently been released from prison. An examination revealed pitting edema in the bend of plaintiff's right knee. The doctor diagnosed him with dermatitis, related to his hepatitis C, and prescribed a steroid injection and Vistaril. (Tr. 156-159).

On May 2, 2003, plaintiff was treated for gas, belching, and heartburn. (Tr. 167). He indicated that the symptoms worsened after eating and when lying down. The nurse prescribed Maalox and Simethicone. (Tr. 167). At this time, plaintiff was also prescribed Tylenol to treat "pain at site of previous surgery/injury/scar." (Tr. 168).

On April 7, 2003, plaintiff was given Ibuprofen for "pain in [his] joint." (Tr. 162, 165-166). On April 10, 2003, plaintiff complained of neck, back, right hip, right knee, and left leg pain. (Tr. 165). The doctor noted pain with movement of the back but no jaundice. Plaintiff was restricted from performing activities requiring strenuous physical activity for periods in excess of four hours. Further, he was prohibited from performing activities involving crawling, stooping, running, jumping, walking or standing. (Tr. 166).

On June 2, 2003, plaintiff was seen by a doctor at the Arkansas Department of Corrections. (Tr. 161). He complained of extreme fatigue. The doctor noted that plaintiff was not dealing well with his illness. An examination revealed a mildly enlarged liver and yellow to amber colored urine. The doctor diagnosed plaintiff with hepatitis C and severe fatigue. He referred plaintiff for gastrointerology and mental health evaluations. (Tr. 161).

On July 12, 2004, plaintiff underwent a general physical examination. (Tr. 178-184). He complained of hepatitis C and exhaustion. Plaintiff reported a history of neck fusion surgery and migraine headaches. A physical exam revealed a normal range of motion in all areas, no spasm, a normal straight leg raise, no joint abnormalities, no atrophy, and no sensory abnormalities. (Tr. 182). Further, there was no evidence of psychosis noted. The doctor diagnosed plaintiff with hepatitis C and a chronic cough of unknown etiology but assessed him with no limitations. (Tr. 183-184).

On December 29, 2004, plaintiff was treated in the emergency room for vomiting and diarrhea. (Tr. 217-220). The doctor noted that plaintiff's hepatitis C could be responsible for his

6

symptoms. (Tr. 218). However, he also noted plaintiff's brother's statement that everyone who ate at their cousin's house had been diagnosed with a bacterial parasite. (Tr. 218).

On February 7, 2005, plaintiff complained of a headache, rash, nausea, body aches, and general malaise. (Tr. 212-215). The doctor diagnosed him with dermatitis. (Tr. 212-215).

On February 14, 2005, plaintiff was evaluated by Dr. Ronny Phipps. (Tr. 222). Plaintiff stated that he had been in prison for 20 years and had contracted hepatitis C while incarcerated. As a result, plaintiff indicated that he suffered from exhaustion, insomnia, loose bowels, and a rash from the ankles up to his abdomen. He told Dr. Phipps that Dr. Ortega had recommended that he undergo a liver biopsy and interferon therapy. However, plaintiff, did not qualify for Medicaid so he had not followed these recommendations. (Tr. 222).

A physical examination revealed clear lungs, a stable heart, and a very prominent rash. (Tr. 222). Dr. Phipps suggested that plaintiff undergo x-rays, a complete blood count, a chemical profile, a liver profile, and a quantitative viral C load. He then recommended that plaintiff see a gastrointerologist. Further, for the dermatitis, Dr. Phipps prescribed Kwell lotion. He noted that if that did not work, he would send plaintiff to a dermatologist for skin scraping to determine the cause of his irritation. (Tr. 222).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency,

and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The record currently before the court reveals that plaintiff suffers from hepatitis C. The record also indicates that plaintiff suffers from chronic fatigue and gastrointestinal symptoms related to this ailment. We note, however, that plaintiff has not sought consistent treatment for hepatitis C. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Further, although plaintiff contends that Dr. Ortega recommended that he undergo a liver biopsy and Interferon therapy, plaintiff failed to do so. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (holding that claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain). At the hearing, plaintiff even testified that

8

he was not taking any prescription medication. (Tr. 269). *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints).

Likewise, while the record shows that plaintiff did suffer from depression and anxiety, plaintiff failed to seek consistent mental health treatment. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). In fact, plaintiff was discharged from service at Ozark Guidance Center in 2001, due to his failure to maintain contact with his counselor. (Tr. 153). *See Dunahoo*, 241 F.3d at 1038. Therefore, although plaintiff was diagnosed with depression, a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990).

Plaintiff also alleges disabling back, knee, and hand pain, as well as migraine headaches. After reviewing the record, we note that plaintiff has not sought treatment for these conditions since 1995. In February 1995, plaintiff reported experiencing some occipital headaches following his surgery. (Tr. 197). However, in spite of these alleged headaches, Dr. Blankenship discharged plaintiff from his care. (Tr. 197). Then, at the administrative hearing in 2005, plaintiff testified that he was merely taking over-the-counter pain medication for his aches and pains. (Tr. 269). *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability). He also indicated that he was able to deal with his headaches effectively enough to care for his two minor grandchildren.

9

Clearly, had plaintiff's pain been as severe as alleged, he would have sought more treatment for his condition and been prescribed stronger pain medication. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain).

However, plaintiff contends that his failure to seek more consistent medical treatment should be excused due a lack of financial resources. "While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." *Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir. 1995). In this case, plaintiff's attempts to excuse his failure to pursue more aggressive treatment cannot be wholly excused due to his claims of financial hardship. While plaintiff has alleged that he did not qualify for Medicaid, the record is devoid of evidence to show that plaintiff sought or was denied low cost or indigent medical care. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). As such, we do not agree that plaintiff's failure to pursue consistent medical treatment is excused by his lack of financial resources.

Plaintiff also contends that he is disabled due to attention deficit disorder. However, we can find no evidence to suggest that plaintiff was ever diagnosed with this disorder. *See Forte v.*

10

*Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Accordingly, it does not constitute a severe or disabling condition.

Plaintiff's own reports concerning his activities of daily living also contradict his claim of disability. On a supplemental interview outline, plaintiff reported an ability to care for his personal hygiene, do the laundry, wash dishes, shop for groceries and clothing, change the sheets, vacuum/sweep, take out the trash, go to the bank and post office, prepare sandwiches, pay bills, use a checkbook, count change, drive, attend church, listen to the radio, read, and sometimes visit relatives and friends. (Tr. 80-81). Plaintiff also indicated that he was able to go to the jail and minister to inmates, as well as visit with his minister on a daily basis. (Tr. 93). Further, records reveal that plaintiff had been caring for two of his infant grandchildren while his wife was away at work. (Tr. 254). Plaintiff acknowledged that he was their primary care giver, indicating that he fed and diapered them. (Tr. 255). When questioned further, plaintiff stated that each child weighed approximately 15 pounds. (Tr. 262). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store).

Plaintiff also stated that he had to perform "400 sweat hours" to qualify for his Habitat for Humanity home. (Tr. 248). Although he could not say exactly how many hours he put into the project, he stated that he had been there each day to oversee the project and even performed some of the interior painting himself. (Tr. 250-251). Said painting required him to lift 25 pounds and work in and around ladders. *See Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to

11

carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Therefore, although plaintiff may experience some difficulties associated with his mental and physical health, we find that the ALJ, after considering all of the relevant evidence, properly concluded that these difficulties did not render plaintiff disabled.

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a limited range of light work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.15459(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987)

(RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, plaintiff's subjective complaints, and his medical records. On July 17, 2004, Dr. Linda Green, a non-examining, consultative examiner, prepared an RFC assessment. (Tr. 186-195). After reviewing his medical records, she concluded that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, as well as sit, stand, and walk for 6 hours during an 8-hour workday. (Tr. 187). Dr. Green also noted that plaintiff would be limited with regard to overhead reaching. (Tr. 189).

Based on the medical evidence of record, we find substantial evidence to support the ALJ's conclusion that plaintiff could perform light work that does not require forward flexion of the neck; holding the head in a downward tilted position for more than five minutes; more than occasional overhead reaching, climbing, bending, stooping, crouching, crawling, or kneeling; climbing ladders, scaffolds, or ropes; work near dangerous machinery; work near exposed food, extreme heat, cold, wetness, or unprotected heights; or, exposure to dust, fumes, smoke, chemicals, or noxious gases. (Tr. 14). The only limitations assessed by plaintiff's treating doctors were assessed while plaintiff was in prison. (Tr. 166). At that time, plaintiff was restricted from performing activities involving strenuous activities for periods in excess of four hours. (Tr. 165-166). Clearly, the ALJ's RFC determination is not in direct conflict with this assessment. Accordingly, the ALJ's RFC determination will stand.

AO72A
(Rev. 8/82)

We also find substantial evidence supports the ALJ's finding that plaintiff could still perform work that exists in significant numbers in the national economy. The VE was asked to assume a hypothetical individual of plaintiff's age, education, and vocational background; who can lift 20 pounds occasionally, 10 pounds frequently, stand for 6 hours of an 8 hour workday; sit for 2 hours of an eight 8 hour workday; occasionally reach overhead, climb, stoop, bend, crouch, kneel, and crawl; cannot climb scaffolds, ladders or ropes; must avoid extreme heat, cold and concentrated wetness due to Hepatitis C; must avoid working at heights and around dangerous machinery due to limited overhead reaching and fatigue; and, must avoid concentrated dust, fumes, smoke, chemicals and noxious gases due to a chronic cough. In response, the VE opined that such an individual could not return to plaintiff's PRW as a small engine mechanic or brake operator because it did not qualify as light work. (Tr. 277, 278). However, she did testify that this individual would have skills that would transfer to other occupations, and cited a cashier II position as an example. (Tr. 278, 279, 281). She stated, however that the occupational job base would be reduced by 50% due to plaintiff's hepatitis C. (Tr. 293). We note that a VE's response to a properly posed hypothetical question constitutes substantial evidence to support an ALJ's findings. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

Although plaintiff contends that the ALJ failed to fully and fairly develop the record with regard to his physical and mental limitations, we note that plaintiff also carries a burden of putting forth the best evidence to support his claim. Because the evidence before this court is not confusing

and does not indicate that additional medical evidence exists to support plaintiff's claim, we do not believe that the ALJ erred in failing to order consultative examinations.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and recommend that the decision be affirmed. The undersigned further recommends that the plaintiff's Complaint be dismissed with prejudice.

DATED this 3rd day of August 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)